159 So. 73

## FIRST NAT. BANK OF BIRMINGHAM v. DE JERNETT.

### 6 Div. 655.

Supreme Court of Alabama.
Jan. 17, 1935.

Murphy, Hanna, Woodall & Lindbergh and Rossie Rogers, all of Birmingham, for appellant.

Howze & Brown and Richard D. Gilliam, Jr., all of Birmingham, for appellee.

566

suit, his widow, the said Nell V. De Jernett (formerly Nell V. Dale), and Ellen Elizabeth Dale, an infant child.

The administration of the decedent's estate was duly removed to the circuit court, in equity.

It appears from the petition filed in the circuit court, in equity, by the administratrix, and made an exhibit to the original bill, that the decedent left unpaid debts, and that the personal property of the estate was insufficient to pay the same; that it was impossible to sell at that time the real estate without causing great loss to the estate.

It appears from the said petition that the decedent died seized and possessed of a certain lot described "as lot 20, in Block 17–C, in the survey of the East Lake Land Company, map of which is recorded in the office of the Judge of Probate for said county in Map Book 6, page 31."

It further appears from said petition that the administratrix, petitioner, had "negotiated a loan for the sum of $1750.00, to be secured by a mortgage on said real estate for the purpose of paying the debts of the estate," and averring that it was to the "interest of the minor heir to mortgage said real estate for the purposes set out."

The petitioner prayed that she be given the right and power, as such administratrix, to borrow a sum not exceeding $1,750, for the purpose of paying the debts of the estate, expenses of the loan, and to execute a mortgage on said lot 20, block 17–C, to the party making such loan to secure the payment thereof.

It further appears from the bill and exhibits that the said administratrix was authorized, by a decree of the court, entered on March 27, 1931, in said cause, to execute a mortgage conveying "all the right, title and interest in said lot 20, in Block 17–C, in the survey of the East Lake Land Company, map of which is recorded in the office of the Judge of Probate of Jefferson County, Alabama, in Map Book C, page 31, which the said decedent had therein at the time of his death, and which the petitioner, Nell V. Dale, widow of said decedent and Ellen Elizabeth Dale, infant child of said decedent now have therein, to secure a loan of not over $1,750.00. * * *"

It appears that thereafter the said administratrix, acting upon the authority, or supposed authority, of said decree, executed to one Frank P. Mansfield a promissory note, signed by herself as administratrix of the estate of Horace C. Dale, deceased, in the prin-

KNIGHT, Justice.

This is an appeal from an interlocutory decree overruling demurrers of appellant, complainant in the original bill, to the cross-bill filed in the cause of Nell V. De Jernett, individually and as administratrix of the estate of Horace C. Dale, deceased.

It appears from the original bill that the said Horace C. Dale died intestate, and that the said Nell V. De Jernett was appointed administratrix of his estate. The said decedent left him surviving, as the only person interested in the property involved in this

cipal sum of $1,750, due and payable April 3, 1934, with interest at the rate of 8 per centum, payable semiannually. Along with this principal note, six interest coupon notes were also executed. To secure the said notes, the said Nell V. De Jernett, as administratrix of the estate of Horace C. Dale, and individually, executed a mortgage on said above-described lot.

. Thereupon, the said administratrix made report to the court that she had secured a loan from Frank P. Mansfield in the sum of $1,750 for the period of three years, bearing interest at the rate of 8 per cent. per annum, payable semiannually, and had executed a mortgage conveying the property to said Frank P. Mansfield to secure said loan. No reference to the execution of a negotiable promissory note in evidence of said loan is made, and that she had paid out the money as set forth in the report.

This report was confirmed by the court, and said mortgage was "declared to be a valid conveyance of all the interest which the said decedent had in said property at the time of his death, as well as all the interest which the said Nell V. Dale, widow of said decedent, and Ellen Elizabeth Dale, infant heir of said decedent, now have in said property. It will also be observed that the court makes no reference to any note, negotiable or otherwise, in this order of confirmation. This order was entered on April 4, 1931.

There is attached to the original bill, as exhibits, copies of the note and interest coupons, and the mortgage. Said mortgage and notes bear date April 3, 1931.

The bill avers that on April 4, 1931, the day on which the order of confirmation was entered, the said Frank P. Mansfield indorsed said note and coupons, and did transfer said mortgage (with apt words of conveyance) to one H. H. McFerren, and that said H. H. McFerren, on May 5, 1931, did by a written instrument "grant, bargain, sell and convey, assign and deliver to complainant herein all his right, title, claim and interest in and to the mortgage and mortgage indebtedness represented by the notes herein described and lands conveyed by said mortgage."

The bill, in this last respect, avers: "And complainant further avers that said principal note was by the payee therein indorsed and said note, the herein described interest coupon notes, and the herein described mortgage were on, to-wit: April 4, 1931, for a valuable consideration, before maturity of any one of said notes, sold and delivered to the complainant, who is now the owner and holder in due course of said notes and mortgage, which are past due, owing and unpaid, as set out below."

The prayer of the bill is for a foreclosure of the mortgage and a sale of the property, and for a moneyed decree over against the said Nell V. De Jernett, in the event the property does not sell for enough to pay the indebtedness, interest, and cost.

To this bill the respondent, Nell V. De Jernett, filed an answer making same a cross-bill against the said First National Bank of Birmingham, and Mrs. William J. Winston, who claimed also to be an indorsee of said notes and a transferee of said mortgage. In her cross-bill, the said cross-complainant denied that she executed the notes in her individual capacity, and denied that the court had authorized her as such administratrix to execute a negotiable promissory note. She averred that the loan which the court had authorized her to secure was not consummated; that the said note and mortgage were without consideration, in that no money was ever paid to her by said Mansfield on said mortgage; and that the possession of said note was obtained by the said Mansfield by fraud and the same was never delivered to him.

With reference to the execution of said mortgage and notes, the respondent makes the following charge: "3. During the negotiations for the loan authorized by the order of court referred to in paragraph 2 of the bill, the attorney who represented Frank P. Mansfield in the transaction required that respondent execute the mortgage prepared by him and then have the execution thereof confirmed before the loan could be made. Respondent followed these instructions. The mortgage was never delivered to the said Mansfield but was left with him to be delivered and to take effect when and if he should make the loan as agreed. The said Mansfield has never made the loan as agreed or any loan, to respondent, either individually, or in her capacity, nor has he used any of his or anyone else's money to redeem the property described in said mortgage from the tax sale and municipal assessments sale, as required in the order authorizing the loan. In order to obtain her signature to the mortgage referred to in the bill and the note, the said Frank P. Mansfield fraudulently represented to respondent that he had the money on hand to make the loan and furnished her with what he represented to be the exact figures neces-

sary to be paid to redeem the property from the tax sale and the municipal assessment sale and to pay the insurance premium, so that she could insert them in her report, and he fraudulently represented to her that all the sums listed in her report would be paid as soon as the decree confirming the execution of the mortgage was signed."

The said respondent prayed that the said First National Bank of Birmingham and Mrs. William J. Winston be decreed to have no right, title, and interest in, or incumbrance upon, the real estate described in the bill of complaint; that the mortgage be canceled as a cloud upon respondent's title to said real estate; that the court decree that respondent is not indebted to the complainant nor to Mrs. Winston on account of said note and mortgage; and that the said note and mortgage be canceled and surrendered to respondent.

■ The respondent, First National Bank of Birmingham, filed many grounds of demurrer to the cross-bill filed by Nell V. De Jernett, and "to each paragraph, allegation and phase thereof, separately and severally." The demurrers were overruled by the court, and this appeal is from that decree.

The demurrer interposed by the First National Bank of Birmingham, as framed and addressed, under our uniform holding, must be regarded as a demurrer to the cross-bill as a whole, and if it contains equity, and is sufficient in any of its aspects, the demurrer was properly overruled. Oden v. King et al., 216 Ala. 504, 113 So. 609, 54 A. L. R. 1413; Jasper Land Co. v. Manchester Sawmills, 209 Ala. 446, 96 So. 417; Robinson v. Griffin, 173 Ala. 372, 56 So. 124; Wood et al. v. Estes, 224 Ala. 140, 139 So. 331; Hunter v. Watters, 226 Ala. 175, 145 So. 472; Roberts et al. v. Ferguson, 226 Ala. 594, 147 So. 894.

■ It may be stated broadly that, in the absence of a statute, an administrator has no inherent authority to borrow money, and to mortgage the property, real or personal, of the estate by way of security for the repayment of the debt. Loans to the representative, in the absence of a proper statute, or the decree of a court of competent jurisdiction, do not constitute valid claims against the estate, although the personal representative may make himself personally liable for the repayment of such loan. Nor has an executor or administrator the inherent power or authority to render the estate liable by giving or indorsing bills of exchange or promissory notes. 24 Corpus Juris §§ 488, 489, and § 69. The duties and authority of administrators and their powers over the property of the estate are defined by statute.

■ However, we entertain no sort of doubt but that a court of equity has the power to authorize an executor or administrator, on proper bill and proof, after due notice to the interested parties, to borrow money, and to pledge as security for its repayment property of the estate subject to administration. This right or power in courts of chancery seems to be generally recognized. It is recognized in this state. Farmers' & Merchants' Bank v. Sanford, 150 Ala. 195, 43 So. 226; Warren v. Southall, 224 Ala. 653, 141 So. 632; Steinhart v. Gregory, 176 Ala. 368, 58 So. 266. But the decree of the court authorizing the administratrix to secure the loan and to pledge the assets of the estate marks the limit of her authority and power, and at the same time gives notice to the lender of the extent of the authority conferred. Thus the decree serves a dual purpose.

It is earnestly insisted that the note executed by the cross-complainant was not a negotiable note; that its negotiability was destroyed by the incorporation therein of the following provision: "Upon failure to pay any interest coupons when due, or to comply with any of the conditions or requirements of said mortgage, this note, at the option of the holder, shall become due and payable."

It is to be noted that the note in question contains this further provision: "This note, as well as the interest coupons attached, is secured by a duly recorded mortgage on real estate, executed to the said Frank P. Mansfield which mortgage secures one principal notes aggregating $1,750.00 without preference or priority of one over the other."

The mortgage provides that the mortgagor shall "pay all taxes, assessment for public improvements and other levies which are or may become a charge or lien on said premises, and keep said premises free of encumbrances which may to any extent be prior to this mortgage," and "keep the insurable improvements on said land insured for their insurable value against loss by fire and against loss or damage by tornado or cyclone. * * *"

■■ We are fully persuaded that there is nothing in the appellee's contention that the acceleration clause destroyed the negotiability of the note, if otherwise negotiable. Code, § 9030. And we are equally convinced that there is no merit in appellee's contention that the negotiability of the note was destroyed by its reference to the mortgage, or by the fact that the mortgage provided

for the payment of taxes, assessments, and incumbrances, or by the fact that the mortgage obligated the mortgagor to keep the property insured. Those provisions are most usual in real estate mortgages, and it cannot be said that the amount due at all events by the terms of the note is rendered thereby uncertain. The agreement to pay taxes and assessments, and to keep the property insured, was an independent and original undertaking, made by the maker of the mortgage to insure the preservation of the security, and in nowise rendered the note uncertain as to the amount due thereon. Louisville Banking Co. v. Gray et al., 123 Ala. 251, 26 So. 205, 82 Am. St. Rep. 120; Thorp v. Mindeman, 123 Wis. 149, 101 N. W. 417, 68 L. R. A. 146, 107 Am. St. Rep. 1003; Barker v. Sartori, 66 Wash. 260, 119 P. 611; Bank of Carroll v. Taylor, 67 Iowa, 572, 25 N. W. 810; Frost v. Fisher, 13 Colo. App. 322, 58 P. 872; Hunter v. Clarke, 184 Ill. 158, 56 N. E. 297, 75 Am. St. Rep. 160; Des Moines Sav. Bank v. Arthur, 163 Iowa, 205, 143 N. W. 556, Ann. Cas. 1916C, 498.

The above contention of appellee must therefore be dismissed from the further consideration of the cause.

█ Notwithstanding the negotiable form of the note, did the appellant acquire it under such circumstances as to render it a holder in due course? Confessedly, under the admission implied from the demurrer, the payee of the note, the said Frank P. Mansfield, was guilty of the grossest fraud in his conduct toward the appellee. He paid nothing for the note, advanced no money on it, or on the mortgage. The note was without consideration. The appellant's only right to enforce its payment depends upon its asserted claim as a holder in due course. Assuming the facts averred in appellee's cross-bill to be true, was the appellant a holder in due course? We think not.

It appears from the decree of the court conferring upon the appellee authority to borrow the money to pay the debts of the estate no authority was given her to execute a negotiable promissory note, but simply to mortgage a certain designated piece of property. It further appears that in the report of the administratrix no mention is made of the fact that she had, in addition to the mortgage, executed to Mansfield a note of any kind, negotiable or nonnegotiable. In the order of the court confirming the mortgage the decree makes no reference to any note, nor does it purport to confirm the act of the administratrix in executing the note.

The decree simply declares and adjudicates that the mortgage is a valid conveyance.

All of the above facts would have at once appeared to the appellant, had it made an investigation of the record.

Was the appellant under duty to ascertain the authority of the administratrix to execute a negotiable note before purchasing the same? If it was, it cannot be affirmed that it was a holder in due course, as alleged in its bill.

In 24 Corpus Juris § 699, p. 196, the principle is broadly stated: "The rule of caveat emptor applies to mortgagees of property from executors or administrators. * * *"

In 65 Corpus Juris, p. 786, the principle is thus stated by the author: "The execution of a mortgage on real estate by individuals as trustees is sufficient to put persons dealing with such upon inquiry of the power possessed by such individuals."

In the case of Haimovitz v. Hawk et al., 80 Fla. 272, 85 So. 668, the Supreme Court of Florida held, in a foreclosure suit, where the notes and mortgage were made by certain alleged trustees, that the fact that the notes and mortgage were signed by the makers as trustees was sufficient to put the payee of the notes, and the mortgagee, on inquiry of the powers possessed by them. That before such obligations could be enforced against the defendants in their representative capacity it was necessary to show the authority for their execution. The court, therefore, held that since the validity of the instruments sought to be enforced depends upon whether the persons executing them had power to do so, it was necessary to allege and prove the existence of such power. In support of its holding the court cited the following cases: First Nat. Bank v. National Broadway Bank, 156 N. Y. 459, 51 N. E. 398, 42 L. R. A. 139; Tuttle v. First Nat. Bank, 187 Mass. 533, 73 N. E. 560, 105 Am. St. Rep. 420; Loring v. Brodie et al., 134 Mass. 453; Gaston et al. v. Amer. Exch. Nat. Bank, 29 N. J. Eq. 98; Ferry et al. v. Laible, 31 N. J. Eq. 566.

The Supreme Court of Nebraska, in the case of Snyder v. Collier et al., 85 Neb. 552, 123 N. W. 1023, 1025, 133 Am. St. Rep. 682, held: "Ordinarily the legal presumption exists that a trustee has no power to sell or mortgage the trust estate. Prospective purchasers and mortgagees must therefore exercise reasonable diligence to ascertain whether the trustee has authority to sell or incumber the real estate. Sternfels v. Watson, supra [(C. C.) 139 F. 505]; Geyser-Marion Gold-Min-

570

ing Co. v. Stark, supra [(C. C. A.) 106 F. 558, 53 L. R. A. 684]; Jones v. Williams, 24 Beav. [Eng.] 47, 62."

The administratrix was but the agent of the court, designated by law for special purposes, and any representations, agreements, and warranties made by her did not bind the estate she represented, unless within the powers possessed by her. That she had no power to execute a negotiable note is clear; that she had no power to execute a mortgage upon the property of the estate, without authority of the court, is likewise true. That she could not make and deliver the mortgage in question without the payment to her of the proceeds thereof is undeniably true. Any effort to deliver the mortgage and make it efficacious, without the money being paid to her, was abortive.

In this case, the mortgage was executed and left with the mortgagee, however, not to be regarded as delivered until the money had been paid to the administratrix. Nothing was paid therefor. On the very day the court undertook to confirm the mortgage, the mortgagee fraudulently disposed of it, without paying anything therefor. The appellant insists, however, that it purchased the paper, without notice, paid value therefor, and before its maturity, and that, therefore, it is an innocent purchaser, and it should be protected in its purchase. The answer thereto is, that the appellant was dealing with an agent of the court with limited power. The law required the appellant to make full investigation of the authority of the administratrix to execute the note and mortgage. Had the appellant done so, it would have discovered the fraud perpetrated by Mansfield.

The Supreme Court of South Carolina, in the case of Ballou v. Young, 42 S. C. 170, 20 S. E. 84, held that the power given a trustee, if necessary in his discretion, to mortgage land held by him in trust for certain purposes, did not include the power to make a negotiable promissory note.

We are persuaded that the court gave the administratrix no power to execute a negotiable promissory note, if it could confer such power, which we do not decide; that the appellant cannot claim, under the facts appearing in the bill and cross-bill, to be a holder in due course, so as to preclude the administratrix from defending upon the ground of the original fraud perpetrated upon her by the said Mansfield. Proper inquiry on the part of the appellant would have disclosed the true situation and the fraud.

It follows, therefore, that the decree appealed from is due to be, and is, affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.

---

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes